# United States District Court

_____MIDDLE_____ DISTRICT OF _____ALABAMA_____

**In the matter of the Search of**
(Name, address or brief description of person, property or premises to be searched)

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: 2:07 mj 90-CSC

**1730 Hale Street
Montgomery County, AL**

I, __Randy Pollard_____ being duly sworn depose and say:

I am a(n) __HIDTA Taskforce Agent_____ and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

**1730 Hale Street
Montgomery County, AL**

in the _____Middle_____ District of _____Alabama_____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

**See  Attachment A which is incorporated herein by reference,**

which are **contraband, evidence of a crime, fruits of a crime, or things otherwise criminally possessed**,

concerning violations of Title _21 United States Code, Sections 841(a)(1) and 846_ .

The facts to support the issuance of a Search Warrant are as follows:

**SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED BY REFERENCE HEREIN**

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

September 26, 2007                                          at    Montgomery, Alabama
_____               _____
Date                                                                City and State

Charles S. Coody, U.S. Magistrate Judge        _____
_____               Signature of Judicial Officer
Name and Title of Judicial Officer

A F F I D A V I T

I, Randy Pollard, having appeared before the undersigned United States Magistrate, and having been duly sworn, deposes and states:

This affidavit, which is based upon personal knowledge and knowledge obtained from other law enforcement officers, is submitted in support of an application for warrant to search the following property and persons:

1730 Hale Street Montgomery, Alabama

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code. I am empowered by law to conduct investigations of and to make arrests for the offenses enumerated in Section 2515, Title 18, United States Code.

2. I have been employed by the Montgomery County Sheriff's Office Montgomery, Alabama since 1996. I am currently assigned to the Montgomery County Sheriff's Office Special Operations Bureau and to the Montgomery HIDTA. I have participated in investigations involving organized crime and narcotics activities. I have gained investigative specialization in the area of methamphetamine, cocaine, marijuana, and/or poly-drug conspiracies. I have also written and executed numerous search and seizure warrants for narcotics, dangerous drugs, records, books and proceeds derived as a result of this illegal activity.

3. I have received information from a reliable Confidential Source (CS) regarding Antonio ROGERS and his brother Carlos ROGERS relative to their cocaine trafficking activity. The CS stated that both Antonio and Carlos ROGERS sell high quality "crack" cocaine from a home located at 1730 Hale Street, Montgomery, Alabama (the residence).

4. The said CS has over the past three months, provided information which has proven to be true, correct, and reliable. The CS has provided information regarding several subjects of ongoing investigations. I have corroborated the CS' information through investigative means.

5. On July 18, 2007, the CS was sent to 1730 Hale Street, Montgomery, Alabama in order to purchase crack cocaine from Antonio ROGERS. Prior to sending the CS to the residence, TFO Pollard instructed him/her to only purchase crack cocaine from Antonio ROGERS. TFO Pollard did this because a number of individuals were known to sell narcotics from this residence. After being searched and being found to be free of money and drugs, the CS was provided $500.00 Official Government Funds and followed to the residence. The CS did not make contact with Antonio ROGERS at the residence. The CS did find Carlos ROGERS at the residence. Carlos ROGERS attempted to sell the CS crack cocaine, but because of the earlier

1

instructions, the CS did not make a purchase from Carlos ROGERS and left the residence. This attempted sale was captured on audio and video.

6. On August 9, 2007 TFO Pollard met with the CS to purchase crack cocaine from Carlos ROGERS or Antonio ROGERS at 1730 Hale Street, Montgomery, Alabama. The CS was instructed by TFO Pollard to attempt to purchase from Antonio ROGERS, but if Carlos ROGERS wanted to sell crack to him/her then make the purchase. After being searched and being found to be free of money and drugs, the CS was provided $500.00 Official Government Funds and followed to the residence at 1730 Hale Street, Montgomery, Alabama. The CS made contact with Carlos ROGERS in the residence. The CS purchased half an ounce of crack cocaine from Carlos ROGERS for $450.00 from within the residence. This purchase was captured on audio and video.

7. On September 20, 2007 TFO Pollard met with the CS in order to purchase crack cocaine from the residence located at 1730 Hale Street, Montgomery, Alabama. After being searched and being found to be free of money and drugs, the CS was provided with $600.00 Official Government Funds. The CS traveled to the residence at 1730 Hale Street, Montgomery, Alabama followed by TFO Pollard and other investigators involved in this case. The CS did not make contact Carlos or Antonio ROGERS at the residence. Instead a black male known to the CS as "Shug", stated that he could help the CS. The CS purchased approximately one half ounce of crack cocaine from "Shug" within the residence. This transaction was also captured on video and audio recordings.

8. A review of the Montgomery City Tax Assessors Office revealed that Hestor Rogers is listed as the owner of the property located at 1730 Hale Street, Montgomery, Alabama.

9. Based on my training experience, previously recited, and my participation in numerous investigations involving narcotics importation and distribution organizations and in financial investigations involving large amounts of controlled substances, currency and other monetary instruments, I am aware of the following;

   a. that large-scale narcotics traffickers commonly maintain on hand large amounts of U.S. Currency in order to maintain and finance their ongoing narcotics business;

   b. that individuals engaged in narcotics trafficking and/or money laundering commonly maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other paper relating to the illegal distribution of controlled substances; that these same individuals commonly "front" (provide on consignment) narcotics to their clients; that the aforementioned books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers are maintained where the narcotics traffickers have ready access to them;

c.  narcotics traffickers and those engaged in the laundering of money commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers for their associates in the trafficking organization;

d.  that, in order to accomplish this concealment, narcotics traffickers frequently build "stash" places within their residences or businesses.  That there are a number of publications available instructing where and how to build "stash" places.  Copies of these types of publications have been found in the residences and businesses of narcotics traffickers;

e.      that it is common for persons involved in large-scale narcotics trafficking to maintain evidence pertaining to their obtaining, secreting, transfer, concealment and or expenditure of narcotics proceeds, such as: currency, financial instruments, precious metals and gemstones, jewelry, books, records, invoices, receipts, records of real estate transactions, bank statements and related records, passbooks, money drafts, letter of credit, money orders, bank drafts, cashiers checks, safe deposit box keys and money wrappers.  These items are maintained by the narcotics traffickers within their residences, businesses or other locations which they maintain dominion and control over;

f.      that large scale narcotics traffickers often utilize electronic equipment such as computers, telex machines, facsimile machines, currency counting machines and telephone answering machines to generate, transfer, count, record and/or store the information described above

g.  that the courts have recognized that the small and medium denominations of questionable currency, along with the manner in which the currency is handled, carried and concealed may establish probable cause that there is a substantial connection between the questionable currency and narcotics transactions;

h.  that narcotics traffickers at times become fearful that their extravagant spending habits will bring them under scrutiny by the Internal Revenue Service or other federal, state, or local agencies.  In order to legitimize their spending, these traffickers file tax returns reporting income commensurate with the amount of money they have spent during the year, which they feel can be traced and documented by the government. The "source" of their income reported on these returns is usually falsely stated, misleading or generic in terms.  Retained copies of these returns are commonly kept by the traffickers in their residences and businesses.

i. Drug traffickers commonly maintain in their wallet, purse or pockets, telephone numbers of drug associates, safe deposit box keys, cash receipts of expenditures or other documents such as business cards, providing leads to the disposition of drug proceeds. Therefore, it is requested that all aforementioned persons be searched for evidence of drug trafficking.

j. Drug traffickers are also known to use their vehicles to transport drugs, store drug proceeds and store records relating to their drug activities, such as gasoline tickets

3

revealing out of town trips. Therefore, it is requested that all vehicles on the aforementioned premises be searched for evidence of drug trafficking.

k. That as an experienced agent, your affiant states that controlled substances can be sold in various quantities which could be small in size. Your affidavit states that because these items are very small, they can easily be hidden on one's person, on one's residence in closed or locked containers, such as file cabinets, safes, vaults, drawers, luggage, briefcases, valises, boxes, cans, bags, purses, and any other closed or locked hiding places. Drug dealers conceal their narcotics in these places as previously described in order to prevent drug "rip-offs" by drug dealers and users and in order to avoid detection and seizure by law enforcement officers.

l. That it has been your affiant's experience that such items as utility bills, and/or rent receipts are essential in the investigation of narcotics violations in that they tend to establish control of the residence.

m. That it has also been your affiant's experience that persons who deal in controlled substances will quite often "front" drugs to buyers and keep records of these in order to keep track of who owes what. These records are commonly referred to as "totes" or "ledgers" and will quite often be found in one's residence and on one's person. Records of this nature are important to the investigation in that they tend to show the intent of the person in possession of these drugs.

n. That it has been your affiant's experience in searching numerous residences for drug violations that it is not uncommon to find such items as scales and/or plastic baggies and/or cigarette rolling papers or other drug paraphernalia, and that these items are essential in the investigations of drug violations in that they tend to establish the intent of possession for sale.

o. That it has also been your affiant's experience that drug manufacturers and traffickers commonly have in their possession, that is on their person, at their residence, and/or their businesses, firearms and ammunition, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns, and other weapons. Said firearms are used to protect and secure drug trafficker's property or enterprise.

p. That it has also been your affiant's experience during numerous searches of residences and persons trafficking in controlled substances, that your affiant and other law enforcement agents have on numerous occasions found photographs and videotapes of the residents of said properties and their associates who were involved with them in criminal activities. Drug traffickers frequently take or cause to be taken photographs or videotapes of themselves, their associates, their property, and their product and that these traffickers usually maintain these photos and tapes in their possession.

q. That it has also been your affiant's experience that drug traffickers often purchase and/or title assets in fictitious names, aliases, or in the names of their relatives, associates or business entities, to avoid detection and seizure of these assets by

government agencies. Also, that even though these assets are in names other than the drug traffickers, the drug traffickers actually own and continue to use these assets and exercise dominion and control over them.

r. That it has also been your affiant's experience that it is common for drug traffickers to use cellular telephones because they are portable and often more difficult to investigate.

Based upon the above described facts, information, observations, and training I believe that probable cause exists for the issuance of a search warrant for 1730 Hale Street, Montgomery, Alabama . I believe that a search of said properties will reveal evidence relating to the Conspiracy to Distribute a Controlled Substance, the Distribution of a Controlled Substance, and Possession With the Intent to Distribute a Controlled Substance in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Cpl. Randy Pollard
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me this 26 day of ___, 2007, by Randy Pollard Task Force Officer, Drug Enforcement Administration.

Charles S. Coody
UNITED STATES CHIEF MAGISTRATE JUDGE

5

## ATTACHMENT "A"

Property to be Seized

1.  Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchasing, and distribution of controlled substances.

2.  Papers, tickets, notes, schedules receipts, and other items relating to domestic and interstate travel.

3.  Books, records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's checks, receipts, pass books, bank checks, safety deposit box keys, and other items evidencing the obtaining, secreting, transferring, and/or concealing of assets and the obtaining, secreting, transferring, concealing, and/or expending of money;

4.  United States currency, precious metals, jewelry, and financial instruments, including stocks and bonds in amounts indicative of the proceeds of illegal narcotics trafficking.

5.  Photographs, video tapes in particular, of co-conspirators, of assets and/or of controlled substances.

6.  Receipts for items evidencing the expenditure of the proceeds of drug distribution, including, but not limited to, clothing, furniture, and electronic equipment.

7.  Paraphernalia for packaging, cutting, weighing, converting, and distributing controlled substances, including, but not limited to scales, baggies, spoons, walkie-talkies, CB's, night-vision devices, two-way radios, police scanners, cellular phones, and beepers.

8.  Indicia of occupancy and residency, and/or ownership of the premises, including but not limited to, utility and telephone bills, cancelled envelopes, and keys.

All the above being fruits, instrumentalities, and evidence of violation of Title 18 U.S.C. §§ 371 and 1956 and Title 21 U.S.C. §§ 841(a)(1), 843(b), 846, and 881.